**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RONALD E. LONG, | : | **CIVIL NO.: 4:16-CV-00139** |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | (Chief Magistrate Judge Schwab) |
| TRANSAMERICA LIFE | : | |
| INSURANCE COMPANY, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM**

**I. Introduction.**

This case arises from an insurance dispute between the plaintiff, Ronald E. Long ("Long"), and the defendant, Transamerica Life Insurance Company ("Transamerica"). The dispute centers on Transamerica's denial of coverage for the amputation of Long's left leg. Transamerica argues it was not required to cover the amputation because Long's diabetes precipitated the need for the amputation. Transamerica has filed a motion for summary judgment. For the reasons that follow, we will deny Transamerica's motion for summary judgment with regard to Long's breach of contract claim, but grant Transamerica's motion for summary judgment with regard to Long's bad faith claim.

## II. Background and Procedural History.

JCPenney Life Insurance Company issued an accidental death and dismemberment plan ("the plan") to Long on April 1, 1999.  *Doc. 45* ¶ 1. Stonebridge Life Insurance Company subsequently took over administration of the policy, and Stonebridge then merged into Transamerica on October 1, 2015.  *Id.* ¶ 2.[1]  While he was insured under the plan, Long suffered an injury which became infected and eventually led to the amputation of his left leg below the knee.  *See* Def.'s Ex. Q.[2]

On January 26, 2016, Long filed complaints in two separate cases, one (this case) against Transamerica, and the other against Hartford Life and Accident Insurance Company ("Hartford").  *See Long v. Hartford Life and Accident Ins. Co.*, No. 4:16-CV-00138 (hereinafter *Long I*) *doc. 1*.  Given the similar factual backgrounds of the two cases, we briefly recite the procedural history of *Long I*.

### A. *Long I.*

In *Long I*, Long alleged essentially the same facts against Hartford that he alleges against Transamerica in the present case: that his leg was amputated below the knee following his fall in early February 2013 and that Hartford refused to pay

---

[1] For the sake of clarity, we will collectively refer to the aforementioned insurance companies as "Transamerica" throughout the remainder of this opinion.

[2] All of the defendant's exhibits can be found at *doc. 47*.

the claim.  *See id.*  Long raised claims against Hartford for breach of contract and bad faith.  *Id.* at 5-6.

After discovery in *Long I*, Hartford moved for summary judgment.  *Long I doc. 27*.  Hartford argued that it was entitled to judgment as a matter of law on Long's breach of contract claim because "there is no basis upon which a reasonable trier of fact could conclude that Plaintiff's amputation was solely the result of an accident … and that Plaintiff's diabetes and related conditions did not contribute to the amputation.  As such, Plaintiff's amputation cannot be considered an injury covered under the Policy and Hartford is entitled to summary judgment." *Long I doc. 28*.  Hartford further argued that it was entitled to judgment as a matter of law on Long's bad faith claim because Long could not point to any evidence that Hartford had acted improperly in denying his claim for benefits.  *Id.* at 20-22.

On June 28, 2018, Judge Matthew W. Brann, writing for this court, granted in part and denied in part Hartford's motion for summary judgment in *Long I*. *Long v. Hartford Life & Accident Ins. Co.*, No. 4:16-CV-00138, 2018 WL 3155826 (M.D. Pa. June 28, 2018).  Judge Brann acknowledged that "[i]n Pennsylvania, insurance policies excluding coverage where a loss is 'caused directly or indirectly by disease' are construed broadly *against* the insured, and 'there can be no recovery under such policies if pre-existing disease contributed to the loss."  *Id.* at *4 (internal alterations omitted) (emphasis in original) (quoting *Shiffler v.*

*Equitable Life Assurance Soc. of the U.S.*, 838 F.2d 78, 84 (3d Cir. 1988)).  Judge

Brann reasoned, however, that the policy at issue in *Long I* "does not neatly align

with the policies discussed in the cases" applying that rule.  *Id.*  Instead, the policy

in question allowed Long to recover "if his 'injury resulted in the loss of either

foot,'" and defined "'injury' as 'bodily injury resulting directly from accident and

independently of all other causes[,] including sickness or disease." *Id.* (internal

alterations omitted) (quoting *Long I* Def.'s Ex. E).  "Reading this language all

together," Judge Brann reasoned, "it is clear that, while Mr. Long's *injury* had to

be independent of any 'sickness or disease,' there is no similar requirement

applicable to his *loss*." *Id.* (emphasis in original).  "In other words, if Mr. Long

can demonstrate that he suffered some accidental injury, not caused in any way by

his diabetes, which injury eventually 'resulted in' his amputation, it is irrelevant

whether or not his diabetes exacerbated the consequences of his injury such that

amputation would not have occurred but for his medical condition. *Id.* (internal

alterations omitted).  Based on that analysis, Judge Brann denied Hartford's motion

for summary judgment with regard to Long's breach of contract claim.

 After denying Hartford's motion for summary judgment on Long's breach of

contract claim, Judge Brann granted Hartford's motion for summary judgment with

regard to Long's bad faith claim.  "The only evidence in front of Hartford

regarding any alleged injury was Mr. Long's own words on his 'statement of

claim.' ... [A]n insured cannot sustain a bad faith claim with merely *ipse dixit*.

Therefore, summary judgment will be granted to Hartford on Count II of Mr.

Long's complaint." *Id.* at *5.  Shortly after Judge Brann granted in part and denied

in part Hartford's motion for summary judgment, the parties settled the case. *Long*

*I docs. 45-46*.


### B. The Present Case.

Just as he did in his case against Hartford, Long initiated the present case

with a complaint alleging breach of contract and bad faith by Transamerica arising

out of the company's refusal to pay benefits under his insurance plan for the

amputation of his leg.  *See doc. 1*.  On August 29, 2016, Judge Brann dismissed

Long's bad faith claim to the extent that it was based on violations of

Pennsylvania's Unfair Insurance Practices Act.  *Doc. 14*.  On November 10, 2016,

the parties consented to jurisdiction before a United States Magistrate Judge, and

the case was assigned to the undersigned.  *See doc. 20*.  The case is now before us

on Transamerica's motion for summary judgment.  *Doc. 44*.

### III. Summary Judgment Motions.

#### A.  Standard for Summary Judgment.

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought."  Fed. R. Civ. P. 56(a).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  *Id.*

In a summary judgment motion, the moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case."  *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information,

affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322. Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. *Id.* at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248-49. When "faced with a summary judgment motion, the

court must view the facts 'in the light most favorable to the nonmoving party.'"

*N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011)

(quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249. The proper inquiry of the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

### B. Material Facts.

When filing a motion for summary judgment, the moving party must comply with Local Rule 56.1, which requires the party to file "a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. Pa. L.R. 56.1. Once the moving party has filed such a statement, the non-moving party is required to file "a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the [moving party's] statement …, as to which it is contended that there exists a genuine issue to be tried." *Id.*

In this case, Transamerica filed a statement of material facts in support of its motion for summary judgment, and Long filed a response. Based on those statements, we turn to the facts of the case that are not in dispute.

### 1. The Plan.

Transamerica issued an accidental death and dismemberment plan to Long on April 1, 1999.[3] *Doc. 45* ¶ 1. The plan specifies that "[i]f, as a result of injury occurring under any of the circumstances listed in the Coverage section, and not otherwise excluded, a Covered Person suffers any of the following Losses within 90 days after the date of an accident which caused such injury, the Company will pay the benefit shown below." Def.'s Ex. A at 4. Under the plan, Transamerica is to pay one-half of the principal sum of the policy for the loss of one foot.[4] *Id.* The plan states, however, that no benefit is to be paid if the injury is "due to disease, bodily or mental infirmity, or medical or surgical treatment of these." *Id.* at 9.[5] The plan defines "injury or injuries" as "accidental bodily injuries sustained by the Covered Person which are the direct cause of Loss, independent of disease or

---

[3] As previously mentioned, the plan was originally issued by JCPenney Life Insurance Company. *See supra* note 1 and accompanying text.

[4] The plan specifies that such sum is to be reduced by one-half "if, before the date of injury resulting in a covered Loss, the Covered Person attains age 70." Def.'s Ex. A at 9.

[5] The plan also specifies six other situations in which benefits are excluded (*id.*), none of which are relevant to the instant motion for summary judgment.

bodily infirmity and occurring while the certificate is in force." *Id.* at 2. The plan also defines the loss of a foot as "complete severance at or above the … ankle joint." *Id.*


### 2. Long's Diabetes.

Long was diagnosed with diabetes in 1974. *Doc. 45* ¶ 12; Def.'s Ex. D at 25:5-10. Due to his diabetes, Long had recurring problems with his feet, including foot ulcers and neuropathy—which Long defines as "loss of feeling in your foot. " *Doc. 45* ¶¶ 15-16, 18; Def.'s Ex. D. at 28-30. In order to treat his foot problems, Long saw multiple podiatrists, including Dr. Schlorff, who treated Long for "10-15 years." Def.'s Ex. D. at 30:14-19; *Doc. 45* ¶ 19. According to Dr. Schlorff, Long's "peripheral neuropathy was rather severe." *Doc. 45* ¶ 31; Def.'s Ex. H at 33:12-13. Dr. Schlorff also thought that Long was at a particularly high risk for amputation of his left foot. *Doc.45* ¶ 36; Def.'s Ex. H. at 52:18-53:23. Long knew and appreciated that as a diabetic he was at risk for amputations of his legs or feet. *Doc. 45* ¶ 24.


### 3. Long's Injury and Treatment.

The parties disagree about the facts surrounding Long's alleged injury, so we will therefore recite the facts of the injury in the light most favorable to Long,

as we are required to do at this stage of the litigation. In his deposition, Long

testified that he injured his foot in early February 2013.[6]  *Id.* at 120, 126.  Per his

testimony, the injury occurred as follows:

> I have a coal stove, and the stove pipe will get plugged with fly
> ash or soot as people call it.  So twice a year the stove pipe is
> removed.  It's a very quick procedure.  And I take it outside to this big
> rock pile that I have that I've been storing rocks there for years and
> concrete for a reason.  And I get up on top and dump the fly ash out.
> Other than that, it blows all over God's creation, on you and your
> house and all.
> And this particular time with quite a bit of snow on the ground I
> take the stove pipe out up on the rock pile like usual, and my foot
> went down in the hole between the rocks and the concrete.  And it
> didn't quite knock me down because I held myself up with the hands,
> broke the stove pipe.  But, anyhow, when I come back out, I had an
> awful gash on my ankle, and I went into the house and bandaged it up,
> and the rest is pretty much history.

*Id.* at 120.

Shortly after the injury, Long called Dr. Schlorff's office, who prescribed

him 500 milligrams of Keflex, an antibiotic.  *Id.* at 47:14-25.  A few days after that

phone call, Long saw Dr. Schlorff in his office.  Def.'s Ex. L at 1.  Per Dr.

Schlorff's recap of that visit, Long presented "with a complaint of a blister

formation overlying the medial aspect of [the] left arch."  *Id.*  Dr. Schlorff noted

"[t]here is a [sic] abscess formation underlying the medial aspect of left arch.

There is [sic] positive signs of systemic infection beyond the area of chief

---

[6] Long testified that the injury occurred on "either the 8th, the 9th, or somewhere in
there."  Def.'s Ex. A at 47:14-16.

complaint. 3cm x 2cm wound medial proximal arch. Necrosis present. Foul smelling drainage present." *Id.* Dr. Schlorff told Long to go to Williamsport Hospital. *Id.*

At Williamsport Hospital, Dr. Stephen F. Weber issued a consultation report about Long's visit. Def.'s Ex. M. According to Weber, "for the last week or so, [Long] has developed an ulcerated area over the medial portion of the left midfoot. He denies any trauma to this area and states that the area just 'opened up.'" *Id.* at 1. Weber continued: "At the present time, I think that he is in grave danger of losing the left foot, and, in fact, it seems to me unlikely that foot [sic] can be salvaged. He has chronic poorly controlled diabetes and obviously would be at significant risk for peripheral vascular disease." *Id.* at 3. Long subsequently had his left leg amputated below the knee. *Doc. 45* ¶ 50; Def.'s ex. Q. Dr. Sai Bhaskara Sajja, who performed the amputation, noted that Long had a "severe left diabetic foot infection." Def.'s Ex. Q at 1.

**4. Long's Claim Under the Plan.**

Approximately one year after having his leg amputated, Long submitted a claim for benefits under the plan. *Doc. 45* ¶ 52. In that claim, Long stated by omission that he did not have any diseases or physical disorders prior to his loss

and that he had not been treated by a doctor in the past two years.  *See doc. 45 ¶¶*
54-55, 57-58; Def.'s Ex. R. at 1.

After receiving the claim for benefits, Transamerica sought medical
information related to the amputation of Long's foot.  *Doc. 45* at 59-60.  As part of
the medical information that Transamerica sought, Amber O'Brien PA-C, a
physician's assistant at Williamsport Hospital, completed an Attending Physician's
Statement.  *Doc. 45 ¶¶* 60-61; Def.'s Ex. S.  According to O'Brien's statement,
Long "slipped on rocks" and had a "nonhealing diabetic foot ulcer" along with
"osteomyelitis."  Def.'s Ex. S at 1.  O'Brien further noted that Long's diabetic
neuropathy contributed to his loss.  *Id.*  Transamerica also consulted with James
Fegan, MD, who noted that Long "slipped on rocks in the woods near his home"
but stated that none of the injuries that Long suffered from that slip were severe
enough to cause him to have his leg amputated.  Def.'s Ex. T. at 1.  Fegan noted
"there was diabetic polyneuropathy … that would be an underlying cause for foot
tissue breakdown due to lack of feeling."  *Id.*  Fegan concluded, "the left foot ulcer
even if it was a result of trauma not medically documented did not occur
independently of underlying disease."  *Id.* at 1-2.

On April 28, 2014, Transamerica, via a letter written by Technical Claims
Specialist James King, denied Long benefits under the plan.  *Doc. 45* ¶ 70; Def.'s
Ex. U.  Transamerica stated: "While we understand you suffered injuries when you

slipped on some rocks on February 9, 2013, the medical information in our file does not indicate the loss of your left foot on February 20, 2013 was due to accidental bodily injury independent of disease." Def.'s Ex. U at 1.

### C. The Parties' Summary Judgment Arguments.

Transamerica bases its argument for summary judgment on interpretation of the terms of the contract. Transamerica argues that Long "cannot satisfy his burden of demonstrating loss caused by an 'injury' as that term is defined by the Policy." *Doc. 46* at 22. "Even if he could, Policy exclusion 7 clearly applies, and that [sic] Transamerica is therefore entitled to summary judgment as a matter of law." *Id.*

Transamerica notes that "[t]he policy covers losses that result from 'injury,' which is defined to mean 'accidental bodily injuries sustained by the Covered Person which are the direct cause of Loss, *independent of disease or bodily infirmity*." *Id.* (emphasis in original). Transamerica argues that such a policy term is analogous to those seen in *Kitsock v. Baltimore Life Ins. Co.*, No. 3:12-CV-01728, 2014 WL 65302, at *6 (M.D. Pa. Jan. 8, 2014) and *Maryland Casualty Co. v. Morrow*, 213 F. 599 (3d Cir. 1914). In *Kitsock*, the undersigned stated:

> "Where an insurance policy contains a clause providing for recovery for fatal injuries 'caused solely through violent external and accidental means,' then there may be recovery on the policy if the accident was the predominant or proximate cause of death." *Shiffler v. Equitable*

*Life Assur. Soc. of U.S.,* 838 F.2d 78, 84 (3d Cir.1988) (citing *Johnson v. Kentucky Central Life & Acc. Ins. Co.,* 144 Pa.Super. 116, 18 A.2d 507, 511 (1941)). But "if the policy contains an additional clause precluding recovery if the death was caused directly or indirectly by disease, there can be no recovery if pre-existing disease contributed to the death." *Id.* (citing *Weiner v. Metropolitan Life Insurance Co.,* 416 F.Supp. 551 (E.D. Pa. 1976); *Dunn v. Maryland Casualty Co.,* 339 Pa.Super. 70, 488 A.2d 313 (1985)). Where the policy contains a provision excluding coverage for death caused wholly or partly by *inter alia* disease or bodily infirmity, "it is insufficient for plaintiff merely to show a direct causal relation between the accident and disability or death." *Rodia v. Metro. Life Ins. Co.,* 354 Pa. 313, 315, 47 A.2d 152 (1946). Rather, the plaintiff must "establish the death was caused solely by external and accidental means," and "[i]f the proof points to a pre-existing infirmity, which may have been a contributing factor, plaintiff must also produce evidence to exclude the possibility." *Id.* Thus, "[w]here it appears that [the] insured's death resulted from accidental injury acting in conjunction with a pre-existing and substantial physical infirmity, there can be no recovery." *Id.* at 315–16, 47 A.2d 152.

*Id.* In *Maryland Casualty Co.*, the Third Circuit stated:

> Under policies of accident insurance limiting the liability of the insurer to disability or death resulting 'independently of all other causes' from accidental injuries, and precluding recovery if the disability or death resulted, wholly or in part, directly or indirectly, from disease or bodily infirmity, it may be laid down as a general rule of law, established by the authorities herein cited, that if the insured, at the time of the alleged accidental injury, was also suffering from a disease, and the accident aggravated the disease, or the disease aggravated the effects of the accident, and actively contributed to the disability or death occasioned thereby, there can be no recovery upon the policy.

*Maryland Casualty Co.*, 213 F. 599, 600-01 (3d Cir. 1914).

Transamerica argues that because "[e]*very* medical record that is relevant to this case references Long's diabetes or a complication (like osteomyelitis) resulting

from Long's diabetes, or both, as a contributing factor in the amputation of Long's foot, … there is no legitimate basis upon which the trier of fact, acting reasonably, could conclude that Long's amputation was sustained 'independent of disease or bodily infirmity.'" *Doc. 46* at 25-27. Transamerica therefore argues that it is entitled to summary judgment on Count I of Long's complaint because Long cannot prove that Transamerica breached the contract.

Transamerica argues two bases for which it should be entitled to summary judgment on Long's bad faith claim. First, Transamerica argues that it is entitled to summary judgment because the company correctly denied benefits to Long. This argument is essentially based on the same facts as Transamerica's breach of contract argument: if the company was correct in denying Long's claim such that it did not breach its contract with Long, then it follows that the company did not act in bad faith in denying Long's claim. Transamerica's second argument is that Long cannot prove bad faith because the doctrine of bad faith "does not extend to "a thorough investigation into a questionable claim." *Id.* (quoting *Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 138 (3d Cir. 2005)). Transamerica argues that it conducted a thorough investigation into Long's claim before denying it and that Long will not be able to produce any evidence of Transamerica's bad faith because "Long did not depose a single Transamerica employee, request a copy of their claims handling standards or guidelines, seek admissions regarding

16

the manner in which the claim was handled, or otherwise seek to adduce evidence to prove his claim for bad faith." *Id.* at 31-32.

On June 8, 2018, Long filed a brief in opposition to the defendants' motion for summary judgment, along with an answer to the defendants' statement of material facts. *See docs. 48-49.* Long argues that "[t]here are numerous factual disputes in this case, which preclude the entry of Summary Judgment for Defendant Transamerica Life Insurance Company." *Doc. 48* at 2. Long points to the two sides having differing accounts of the interactions between Long and Dr. Schlorff in the time between Long's initial injury and his admission to Williamsport Hospital. *See id.* at 4-7. Long also relies on an expert report authored by Dr. Ajaykumar D. Rao, an Assistant Professor of Medicine at Temple University, Lewis Katz School of Medicine. *Id.* at 7. In particular, Long relies on Dr. Rao's statement that "the need for amputation in Mr. Long's case was related to the pus-forming wound which was caused by an injury. Mr. Long appropriately contacted his treating providers. His diabetes was not the cause of the amputation." *Id.* Finally, Long points to the fact that Transamerica had evidence that Long suffered a foot injury independent of his diabetes at the time that the company denied his claim, but "[d]espite having evidence of an injury to the foot, which caused a [sic] infection and ultimately led to Long's leg being amputated,

Transamerica inexplicably denied coverage on the basis that the need for amputation was due to Mr. Long's pre-existing diabetes." *Id.* at 8.

After pointing to factual disputes that purportedly defeat Transamerica's motion for summary judgment, Long raises a number of arguments as to why Transamerica is not entitled to judgment as a matter of law. Long first argues that the leg injury was the cause of his amputation, independent of his diabetes. "The accidental fall and the accidental injury to Long's leg are independent of all other causes. Long contracted infections due to his accidental fall and accidental injury which led to his leg being amputated. Long suffered an accidental injury which resulted in the loss of his foot and lower leg. This is an accidental injury and accidental loss of foot. Long would never have had his leg amputated, but for the accidental slip and fall." *Id.* at 11.

Long further argues that Transamerica's motion for summary judgment should be denied because "Pennsylvania law does not allow an insurer to use the explicit language of its insurance policy to defeat the reasonable expectations of an insured." *Id.* at 12. Long argues that he had a "reasonable expectation that an amputation would be covered based upon the information and advertisements that were presented to him," and therefore argues that his complaint should survive the summary judgment stage on the basis of his reasonable expectation. *Id.* at 15.

With regard to Transamerica's reliance on *Kitsock* and *Maryland Casualty Company*, Long asserts that Transamerica's argument fails because it does not account for his reasonable expectation and because Long's diabetes had nothing to do with his initial slip and fall injury. *Id.* at 15.

Finally, Long argues that Transamerica is not entitled to judgment as a matter of law on his bad faith claim because "bad faith includes not only an unfounded refusal to pay a claim, but also encompasses inadequate or biased investigations." *Id.* at 17 (quoting *Greco v. Paul Revere Life Ins. Co.*, No. 97-6317, 1999 WL 95717 (E.D. Pa. Feb. 12, 1999)). Long argues that Transamerica ignored evidence of his injury while investigating his claim "because it did not favor [Transamerica's] position." *Id.* at 17-18.

Following Long's brief in opposition to the motion for summary judgment, Transamerica filed a reply brief on June 19, 2018. *Doc. 50.* Transamerica raises four arguments in reply to Long's brief. *Id.* First, Transamerica argues that Long's reliance on Dr. Rao's expert testimony is misplaced because "Long ignores Dr. Rao's repeated, unequivocal conclusion that Long's diabetes caused [Long's] 'pus-forming wound' to not heal appropriately." *Id.* at 2. Second, Transamerica argues that Long's reasonable expectation argument fails because "[d]espite the length of Long's argument, he has offered no evidence whatsoever to claim that Transamerica did something to give him the *reasonable* expectation that *any* loss

suffered by Long would be covered by the Policy." *Id.* at 6. Transamerica points

to the fact that Long does not have any evidence of the pamphlets or flyers that he

allegedly saw to support his reasonable expectation argument, and therefore argues

that his reasonable expectation argument is nothing more than an unsupported

allegation. *Id.* at 6-7. Third, Transamerica argues that Long failed to rebut its

argument that his diabetes had contributed to the amputation. *Id.* at 8.

Transamerica asserts that "[t]he dispositive issue under the Policy is not whether

an *injury* was caused or contributed to by a disease (namely, diabetes). The issue

instead is whether a disease (or any bodily infirmity) caused or contributed to

Long's ultimate *loss*." *Id.* Finally, Transamerica reiterated its argument that

Long's bad faith claim failed because he could not point to any evidence that

Transamerica acted in bad faith. *Id.* at 10-11.


## IV. Discussion.

### A. Breach of Contract.

"[I]nterpretation of an insurance policy is a question of law." *State Farm*

*Mut. Auto. Ins. Co. v. Universal Underwriters Ins. Co.*, 701 A.2d 1330, 1331 (Pa.

1997) (citing *Paylor v. Hartford Ins. Co.*, 640 A.2d 1234, 1235 (Pa. 1994)).

"[B]ecause 'insurance policies are contracts, the rules of contract interpretation

provide that the mutual intention of the parties at the time they formed the contract

governs its interpretation.'"  *Windows v. Erie Ins. Exch.*, 161 A.3d 953, 957 (Pa.

Super. Ct. 2017) (alterations omitted) (quoting *Am. & Foreign Ins. Co. v. Jerry's

Sport Ctr.*, 2 A.3d 526, 540 (Pa. 2010)).

"It is well-established that three elements are necessary to plead a cause of

action for breach of contract: (1) the existence of a contract, including its essential

terms, (2) a breach of the contract; and, (3) resultant damages."  *412 N. Front St.

Assocs., LP v. Spector Gadon & Rosen, P.C.*, 151 A.3d 646, 657 (Pa. Super. Ct.

2016) (quoting *Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. Law Firm of

Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016)).  "In order to recover

damages pursuant to a breach of contract, the plaintiff must show a causal

connection between the breach and the loss."  *Id.* (quoting *Logan v. Mirror

Printing Co. of Altoona, Pa.*, 600 A.2d 225, 226 (1991)).

"Where an insurance policy contains a clause providing for recovery for

fatal injuries 'caused solely through violent external and accidental means,' then

there may be recovery on the policy if the accident was the predominant or

proximate cause of death."  *Shiffler*, 838 F.2d at 84 (quoting *Johnson v. Ky. Cent.

Life Assurance Soc. of U.S.*, 18 A.2d 507, 511 (Pa. Super. Ct. 1941)).  However, if

the policy contains an additional clause precluding recovery if the death was

caused directly or indirectly by disease, there can be no recovery if pre-existing

disease contributed to the death."  *Id.* (citing *Weiner v. Metro. Life Ins. Co.*, 416 F. Supp. 551 (E.D. Pa. 1976)).

In *Long I*, Judge Brann concluded that Hartford was not entitled to summary judgment on Long's breach of contract claim because the policy in that case did not "neatly align" with the policy at issue in *Shiffler* and similar cases.  Given Judge Brann's conclusion, we turn to a comparison of the plans at issue in the two *Long* cases.

### 1. The Plan in This Case Compared to the Plan in *Long I*.

In the present case, the plan specifies that "[i]f, as a result of injury occurring under any of the circumstances listed in the Coverage section, and not otherwise excluded, a Covered Person suffers any of the following Losses within 90 days after the date of an accident which caused such injury, the Company will pay the benefit shown below."  Def.'s Ex. A at 4.  The plan states, however, that no benefit was to be paid if the injury was "due to disease, bodily or mental infirmity, or medical or surgical treatment of these."  *Id.* at 9.  The plan defines "injury or injuries" as "accidental bodily injuries sustained by the Covered Person which are the direct cause of Loss, independent of disease or bodily infirmity and occurring while the certificate is in force."  *Id.* at 2.

In *Long I*, the policy at issue defined an injury as "bodily injury resulting directly from accident and independently of all other causes which occurs while the Covered Person is covered under the policy." *Long I doc. 28-5* at 2. The policy clarified that "[l]oss resulting from … sickness or disease, except a pus-forming infection which occurs through an accidental wound … is not considered as resulting from injury." *Id.*

In interpreting the language at issue in *Long I*, Judge Brann concluded that "while Mr. Long's *injury* had to be independent of any 'sickness or disease,' there is no similar requirement applicable to his *loss*." *Long I*, 2018 WL 3155826, at *4. We find Judge Brann's reasoning instructive for the present case. Like the policy in *Long I*, the plan in the present case specifies that losses are covered if they are caused by injuries, but not where the injury is "due to disease, bodily or mental infirmity, or medical or surgical treatment of these." Def.'s Ex. A at 9. The plan thus specifies that an injury has to be "independent of any 'sickness or disease,' [but] there is no similar requirement applicable to [a] loss." *Long I*, 2018 WL 3155825, at *4. "In other words, if Mr. Long can demonstrate that he suffered some accidental injury, not caused in any way by his diabetes, which injury eventually 'resulted in' his amputation, it is irrelevant whether or not his diabetes exacerbated the consequences of his injury such that amputation would not have occurred but for his medical condition." *Id.* (alterations omitted).

Like Long's breach of contract claim in *Long I*, there are disputed factual issues here that preclude the entry of summary judgment. If Long can prove that his fall caused his initial injury, and that that injury eventually resulted in the loss of his leg, he will be able to prevail on his breach of contract claim. On the other hand, if Transamerica can prove that Long's diabetes caused his initial injury or that Long's fall did not happen in the way he initially said it did, then Transamerica will be able to prevail on Long's breach of contract claim. As previously mentioned, the parties in this case do not agree on the facts regarding Long's initial injury and subsequent treatment. Given that those facts are material to Long's breach of contract claim, they must be determined by the fact finder since it is not our place to weigh facts at the summary judgment stage. We will therefore deny Transamerica's motion for summary judgment with regard to Long's breach of contract claim.

### B. Bad Faith.

A court may rule in favor of an insured "if the court finds that the insurer has acted in bad faith toward the insured." 42 Pa. Cons. Stat. § 8371. "[I]n order to recover in a bad faith action, the plaintiff must present clear and convincing evidence (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew of or recklessly disregarded its lack

of a reasonable basis." *Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 365 (Pa. 2017) (citing *Terletsky v. Prudential Prop. & Cas. Ins. Co.*, 649 A.2d 680, 689-90 (Pa. Super. Ct. 1994)). "[P]roof of an insurance company's motive of self-interest or ill-will is not a prerequisite to prevailing in a bad faith claim under Section 8371." *Id.*

Transamerica clearly had a reasonable basis for denying Long benefits under the plan. Transamerica's investigation of Long's claim clearly showed that Long's diabetes contributed to his amputation, and the company was therefore justified in withholding benefits on that basis. Long argues that "bad faith includes not only an unfounded refusal to pay a claim, but also encompasses inadequate or biased investigations." *Doc. 48* at 17. However, there is nothing in the record to suggest that Transamerica engaged in such an inadequate or biased investigation. Furthermore, as Transamerica indicates, "Long did not depose a single Transamerica employee, request a copy of their claims handling standards or guidelines, seek admissions regarding the manner in which the claim was handled, or otherwise seek to adduce evidence to prove his claim for bad faith." *Doc. 46* at 32. We therefore find that Transamerica is entitled to judgment as a matter of law with regard to Long's bad faith claim.

**IV. Conclusion.**

For the reasons set forth above, we will deny Transamerica's motion for summary judgment with regard to Long's breach of contract claim and grant Transamerica's motion for summary judgment with regard to Long's bad faith claim. An appropriate implementing order will follow.

_**S/Susan E. Schwab**_
Susan E. Schwab
Chief United States Magistrate Judge